ARTHUR R. MacLELLAN *vs.* JAMES H. MARINE.

*Power of Mayor of Baltimore City to Remove Summarily Officer Ap-*
*pointed by a Preceding Mayor Within Six Months After Appoint-*
*ment—Right of Removal Applies to Officers Re-appointed for a*
*Second Term.*

Section 25 of the Charter of Baltimore City provides that the Mayor shall have the power to remove at pleasure, during the first six months of their respective terms, all officers appointed by him, but after six months the Mayor shall only remove said officials for cause, after notice and trial. Under sec. 172 of the Charter, the Commissioners for Opening Streets are appointed by the Mayor for the term of three years. In February, 1903, the then Mayor of said city, re-appointed the appellant

as one of said commissioners for a second term of three years. In July, 1903, he was removed from office summarily by the Mayor who had succeeded the former one in office, and the appellee was appointed in his place. Upon petition for a *mandamus* requiring the appellant to vacate the office, *held*, that the power summarily to remove a municipal officer during the first six months of his term may be exercised by a succeeding Mayor and is not restricted to the Mayor who originally appointed the officer.

*Held*, further, that when a municipal officer is re-appointed for a second term, the Mayor has the same power of summary removal during the first six months of the second term that he had during the first term; the probationary period being an incident to each term of office, without regard to the individual who may be appointed.

Appeal from the Superior Court of Baltimore City (PHELPS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Thomas G. Hayes*, for the appellant.

*Leon E. Greenbaum*, for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

This is an application for a writ of *mandamus*. The facts are few and are as follows: In February, 1900, the appellant, Arthur R. MacLellan, was appointed by Mayor Hayes one of the Commissioners for Opening Streets in the city of Baltimore. The term for which he was appointed was three years, beginning on March the first, 1900. In February, 1903, Mayor Hayes re-appointed the appellant for a second term of three years, but on July 27th, 1903, Mayor McLane, who succeeded Mayor Hayes, removed the appellant and two days later commissioned James H. Marine, the appellee, to fill .the vacancy caused by the removal of Mr. MacLellan. After qualifying Mr. Marine demanded possession of the office but Mr. MacLellan refused to surrender it. Thereupon Mr. Marine filed a petition in the Superior Court praying that a writ of *mandamus* might issue commanding Mr. MacLellan to vacate the office. The petition was duly answered. Issue was joined

on some of the paragraphs of the answer and others were demurred to.   A brief agreed statement of facts was signed and the case was heard.   The demurrer was sustained and a peremptory writ of *mandamus* was awarded.   From that order Mr. MacLellan has appealed.

The removal of the appellant by Mayor McLane was summary and without notice or a hearing.   The single question in the case is whether Mayor McLane had authority to make the removal in the summary way he did.   The office of Commissioner for Opening Streets was created or at least continued by the Charter of Baltimore City.   Section 172 of the Charter fixes the duration of the term of office at three years and provides that the commissioners shall be appointed by the Mayor in the manner prescribed in section 25 of the Charter and shall be removable as therein provided.   Section 25 enacts "That the Mayor shall have the sole power of appointment of all heads of departments, heads of sub-departments, municipal officers not embraced in a department, and all special commissioners of roads, except as otherwise provided in this article, subject to confirmation by a majority vote of all the members elected to the Second Branch of the City Council. * * * The Mayor shall have the power to remove at pleasure, during the first six months of their respective terms, the heads of all departments or members thereof, heads of sub-departments or members thereof, municipal officers not embraced in a department, and special commissioners or boards, or members thereof, appointed by him, but after six months the Mayor shall only remove said officials for cause, after charges preferred against them, notice given and trial had before the Mayor."

It is perfectly obvious that every appointee of the Mayor takes office subject to the terms of the section just quoted. In accepting an appointment the appointee in effect and in fact agrees that he may be summarily dismissed at any time during the first six months of his term at the mere pleasure of the Mayor.

In view of the explicit provision of the Charter if applicable

to the case at bar all discussion as to whether the removal of
the appellant was in violation of the Federal Constitution is
necessarily eliminated. But it is insisted first that this sum-
mary power of removal can only be exercised by the Mayor—
the same individual—who made the appointment; and, sec-
ondly, that when an officer has been re-appointed for a second
term the power of summary removal does not attach to the
second term at all. The controversy is thus narrowed down
to these two contentions and both of them depend on the
reading to be given section 25 of the City Charter.

The first contention, namely, that the power of removal at
pleasure during the first six months of the term is lodged
solely with the Mayor who made the appointment, is founded
exclusively upon the use of the personal pronoun "him" in-
stead of the word "mayor" in the section we have heretofore
quoted. Dropping out the intervening words and reducing
the sentence so as to present the precise question sharply, the
section will read: "The Mayor shall have the power to re-
move at pleasure during the first six months of their respective
terms" all officers, "*appointed by him.*" It must be borne in
mind that all municipal officers are not appointed by the
Mayor; and it was clearly not the design of the Legislature
to confer on the Mayor a summary power to remove at his
pleasure any municipal officer no matter by what method that
officer had been appointed. True it is that with respect to
officers not appointed by the Mayor other modes of removal
are prescribed by the charter and strictly speaking, it might
not have been necessary to add the words "appointed by him"
as descriptive of the persons he could remove at pleasure; but
to prevent misconstruction or perhaps a clash of authority it
was evidently deemed wise to define with precision the class
of officers designed to be brought within the summary power
conferred upon the Mayor, and therefore, the words "ap-
pointed by him" were employed, not to designate persons
whom the Mayor, exercising the power of removal, had him-
self previously appointed, but to describe the whole class of
municipal officers whom the Mayor was empowered to ap-

point under section 25. "Appointed by him" means "appointed by the Mayor." If this were not so and if the pronoun "him" must be read as meaning the same individual who made the appointment, then it necessarily follows that not only could no incoming Mayor remove an incumbent appointed by a preceeding Mayor a few days before the latter's retirement from office; but the new Mayor could not even displace an unfaithful or incompetent official, because of unfaithfulness or incompetency if more than six months had elapsed since the latter's appointment by a Mayor whose own term had subsequently expired. Let us see if this is not undeniable. The section in plain terms gives the Mayor the power to remove at pleasure during the first six months all officials "appointed by him." After six months the Mayor shall only remove "*said officials*" for cause. Who are "*said officials?*" Obviously officials appointed by him; because they are the officials and the only officials antecedently designated. But if "appointed by him" means appointed by the person who undertakes to remove them, then no official appointed by an outgoing Mayor could be removed by that Mayor's successor even for cause, since the *successor* of the Mayor who did make the appointment is not the *him*—the individual—by whom the recusant official was selected. According to the contention *him* designates the individual who made the appointment. The successor of that individual in the office of Mayor may not be the same person as the one who made the appointment. If he should not be, then no one appointed by his predecessor could be removed by the succeeding incumbent inasmuch as the latter could not remove any officials unless they belonged to the class described as "said officials," that is, officials appointed by him, the successor. It is clear, we think, that the pronoun "him" has reference to the noun Mayor, and read in that way the section undoubtedly means that the Mayor can remove the officers whom the Mayor has authority to appoint, whether appointed by him or by his predecessor.

*Secondly.* It is insisted that the right of the Mayor to remove a municipal officer during the first six months of a term

has no application to an officer who has been reappointed to a second term. We find no warrant in the statute for that contention. A reappointment for a second term is for a totally distinct term connected in no way with the prior one. There is nothing in section 25 to exempt an appointee from removal at pleasure during the first six months of a second term. The probationary period of six months attaches to each term of office and not merely to the first six months of service. The probationary period is an incident to each term without regard to the individual who may be appointed. To exempt a second term from its operation, words would have to be imported into the statute which are not there now. The section would then read: The Mayor shall have the power to remove at pleasure during the first six months of their respective terms all municipal officers "appointed by him," but in cases of reappointments this provision shall not apply to second or subsequent terms. We find nothing in the language, the policy or the purpose of the charter to warrant such an interpolation. To incorporate it would be unwarrantable judicial legislation.

Finding no error in the conclusion reached by the Court below its order directing the peremptory writ of *mandamus* to issue will be affirmed; and it is so ordered.

*Order affirmed with costs above and below.*

(Decided December 3rd, 1903.)